**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK WOLDANSKI, Individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>TUSIMPLE HOLDINGS, INC.; CHENG LU; PATRICK DILLON; ERIC TAPIA; XIAODI HOU; MO CHEN; JAMES MULLEN; MORGAN STANLEY & CO. LLC; CITIGROUP GLOBAL MARKETS INC.; J.P. MORGAN SECURITIES LLC; BOFA SECURITIES, INC.; CREDIT SUISSE SECURITIES (USA) LLC; COWEN AND COMPANY, LLC; NOMURA SECURITIES INTERNATIONAL, INC.; RBC CAPITAL MARKETS, LLC; NEEDHAM & COMPANY, LLC; OPPENHEIMER & CO. INC.; PIPER SANDLER & CO.; ROBERT W. BAIRD & CO. INCORPORATED; and VALUABLE CAPITAL LIMITED,<br><br>       Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Patrick Woldanski ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to

1

Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding TuSimple Holdings, Inc. ("TuSimple" or the "Company") and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of all persons who: (a) purchased or otherwise acquired TuSimple securities pursuant and/or traceable to the Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with TuSimple's April 15, 2021 initial public offering ("IPO"); and/or (b) that purchased or otherwise acquired TuSimple securities between April 15, 2021 and October 31, 2022, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Act of 1933 (the "Securities Act") and Securities Exchange Act of 1934 (the "Exchange Act").

2.      TuSimple develops autonomous technology specifically designed for semi-trucks in the United States and internationally. It is developing a line of purpose-built Level 4 ("L4") autonomous semi-trucks for the North American market. The Company operates its Autonomous Freight Network ("AFN") L4 autonomous semi-trucks equipped with its autonomous driving technology. According to TuSimple, AFN is an ecosystem that consists of L4 autonomous semi-trucks, high-definition digital mapped routes, terminals, and TuSimple Connect, a cloud-based autonomous operations oversight system. Founded in 2015, the

Company conducted its initial public offering in April 2021, and its securities trade on the Nasdaq Stock Market ("NASDAQ") under the symbol "TSP."

3.      On April 15, 2021, TuSimple effected its IPO, selling 33.8 million class A common shares at $40.00 per share, generating $1.031 billion in gross proceeds. The Registration Statement contained materially false and misleading statements of fact and/or failed to disclose facts required to be disclosed therein regarding TuSimple's business, operations, and prospects.

4.      On Sunday, October 30, 2022, The Wall Street Journal published an article titled, "TuSimple Probed by FBI, SEC Over Its Ties to a Chinese Startup". According to the article, TuSimple was being investigated "into whether it improperly financed and transferred technology to a Chinese startup".

5.      On October 31, 2022, TuSimple filed a Form 8-K with the SEC. Attached to the Form 8-K was a press release announcing that the Board of Directors of TuSimple (the "Board") had terminated defendant Xiaodi Hou from his position "as the Chief Executive Officer, President and Chief Technology Officer of the Company and removed Dr. Hou from his position as Chairman of the Board, in each case, effective as of October 30, 2022."

6.      On this news, TuSimple share prices fell $2.88, or over 45%, to close on October 31, 2022, at $3.43 per share.

7.      Throughout the Class Period and in connection with the IPO effected by means of the Registration Statement, Defendants made materially false or misleading statements and/or failed to disclose, inter alia, that: (1) TuSimple was engaged in undisclosed related party transactions with Hydron, a company founded by Defendant Chen; (2) TuSimple shared confidential information and/or proprietary technology with Hydron without Board approval or informing regulators or TuSimple shareholders; (3) TuSimple failed to disclose the Board's internal investigation, which commenced in July 2022, into TuSimple's ties to Hydron; (4) the aforementioned conduct enhanced the likelihood of regulatory scrutiny and investigatory action

toward the Company; and (5) as a result, the Company's public statements were materially false and misleading at all relevant times.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

9.      As of the date of the filing of this Complaint, TuSimple shares traded as low as $2.61 per share, representing a decline of over 93% from the $40 IPO offering price.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2) and 77o), Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b), Section 22 of the Securities Act (15 U.S.C. § 77v(a)), and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.  Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as TuSimple's shares trade on the NASDAQ ("NASDAQ") in this Judicial District and many of the underwriters of TuSimple's IPO have offices in this Judicial District.

13.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

14.     Plaintiff, as set forth in the attached Certification, purchased or otherwise acquired TuSimple securities pursuant to the IPO and/or during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant TuSimple is a Delaware corporation with principal executive offices located at 9191 Towne Centre Drive, Suite 600, San Diego, California 92122. The Company's common stock trades in an efficient market on the NASDAQ under the trading symbol "TSP."

16.     Defendant Cheng Lu ("Lu") was the Company's President and Chief Executive Officer ("CEO") during the Class Period until his resignation on March 3, 2022. Defendant Lu signed TuSimple's Forms 10-K and 10-Q filed with the SEC during the Class Period.

17.     Defendant Patrick Dillon ("Dillon") was at all relevant times the Company's Chief Financial Officer ("CFO") throughout the Class Period until his resignation on July 7, 2022. Defendant Dillon signed TuSimple's Forms 10-K and 10-Q filed with the SEC during the Class Period.

18.     Defendant Eric Tapia ("Tapia") was the interim CFO following Defendant Dillon's departure and at all relevant times thereafter. Defendant Tapia signed TuSimple's Form 10-Q filed with the SEC during the Class Period.

19.     Defendant Xiaodi Hou ("Defendant Hou") was TuSimple's co-founder. He served as Chief Technology Officer ("CTO") during the Class Period until March 3, 2022, at which point he was appointed to serve as President, CEO, and Chairperson of the Board. Effective October 30, 2022, Defendant Hou was removed from all his positions. Defendant Hou signed TuSimple's

Forms 10-Q during the Class Period.

20.     Defendant Mo Chen ("Defendant Chen") was TuSimple's co-founder, Executive Chairman, and director. Prior to the Class Period, Defendant Chen served as CEO from 2015 to September 2020. Defendant Chen started Hydron Inc. ("Hydron"), the undisclosed related party relevant to this case.

21.     Defendant James Mullen ("Defendant Mullen") was TuSimple's Chief Administrative and Legal Officer.

22.     Defendants Lu, Dillon, Tapia, Hou, Chen, and Mullen are referred to herein collectively as the "Individual Defendants."

23.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter for the Company's IPO.

24.     Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter for the Company's IPO.

25.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO.

26.     Defendant BofA Securities, Inc. ("BofA") served as an underwriter for the Company's IPO.

27.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for the Company's IPO.

28.     Defendant Cowen and Company, LLC ("Cowen") served as an underwriter for the Company's IPO.

29.     Defendant Nomura Securities International, Inc. ("Nomura") served as an underwriter for the Company's IPO.

30.     Defendant RBC Capital Markets, LLC ("RBC") served as an underwriter for the Company's IPO.

31.     Defendant Needham & Company, LLC ("Needham") served as an underwriter for the Company's IPO.

32.     Defendant Oppenheimer & Co., Inc. ("Oppenheimer") served as an underwriter for the Company's IPO.

33.     Defendant Piper Sandler & Co. ("Piper Sandler") served as an underwriter for the Company's IPO.

34.     Defendant Robert W. Baird & Co. Incorporated ("Baird") served as an underwriter for the Company's IPO.

35.     Defendant Valuable Capital Limited ("Valuable Capital") served as an underwriter for the Company's IPO.

36.     Defendants listed in paragraphs 23 – 35 are referred to herein as the "Underwriter Defendants."

37.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

38.     The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared substantial fees from the IPO collectively.

39.     The Underwriter Defendants also obtained an agreement from the Company and the Individual Defendants that TuSimple would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.

40.     Representatives of the Underwriter Defendants also assisted the Company and the

Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of the Company, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, and current corporate information concerning the Company's most up-to-date operational and financial results and prospects.

41.    In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with the Company's lawyers, management, and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which the Company's securities would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about the Company's would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and the Company's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, the Company's existing problems as detailed herein.

42.    The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

## SUBSTANTIVE ALLEGATIONS
### Background

43.    TuSimple describes itself as "a self-driving technology company with the mission to

improve the safety and efficiency of the trucking industry." The Company, founded in 2015, is principally engaged in the operation and development of autonomous trucks and an autonomous freight network ("AFN"). According to the Company, it has "developed industry-leading autonomous technology specifically designed for semi-trucks." This technology has purportedly enabled the Company to build the world's first AFN in partnership with world-class shippers, carriers, railroads, freight brokers, fleet asset owners, and truck hardware partners.

44. On December 23, 2020, TuSimple submitted to the SEC a draft Registration Statement on Form S-1 relating to a proposed IPO of its common shares.

45. After receiving correspondence from the SEC, on February 16, 2021, TuSimple filed a revised draft Registration Statement on Form DRS/A with the SEC, following by another revision on March 8, 2021.

46. On March 23, 2021, the Company filed the operative Registration Statement on Form S-1.

47. On April 7, 2021, the Company filed an Amendment No. 1 to the Registration Statement.

48. On April 14, 2021, the Registration Statement was declared effective.

49. On April 16, 2021, the Company filed with the SEC its Prospectus on Form 424B4 with the SEC, which incorporated and formed part of the Registration Statement. Pursuant to the Registration Statement, Defendants offered and sold 33,783,783 Class A common shares at $40 per share, raising total proceeds of approximately $1.031 billion.

50. TuSimple's common stock started trading on the NASDAQ under the symbol "TSP."

51. The Registration Statement for TuSimple's IPO was negligently prepared and, as a result, contained materially false and misleading statements of fact and failed to disclose material facts required to be disclosed under the rules and regulations applicable to its preparation.

**Materially False and Misleading Statements and Omissions Issued in the
Proxy Statement for the Merger**

52.     The Registration Statement stated, in pertinent part, the following regarding the

importance of TuSimple's technology and intellectual property for its business:

> "***Our business may be adversely affected if we are unable to adequately
> establish, maintain, protect, and enforce our intellectual property and
> proprietary rights or prevent third parties from making unauthorized use of
> our technology and other intellectual property rights.***
>
> ***<u>Our intellectual property is an essential asset of our business. Failure to
> adequately protect our intellectual property rights could result in our
> competitors offering similar products, potentially resulting in the loss of our
> competitive advantage, and a decrease in our revenue</u>*** which would adversely
> affect our business prospects, financial condition, and operating results. Our
> success depends, at least in part, on our ability to protect our core technology
> and intellectual property. We rely on a combination of intellectual property
> rights, such as patents, trademarks, copyrights, and trade secrets (including
> know-how), in addition to employee and third-party nondisclosure agreements,
> intellectual property licenses, and other contractual rights, to establish,
> maintain, protect, and enforce our rights in our technology, proprietary
> information, and processes.
>
> \*     \*     \*
>
> Further, the standards applied by the USPTO and foreign patent offices in
> granting patents are not always applied uniformly or predictably. For example,
> there is no uniform worldwide policy regarding patentable subject matter or the
> scope of claims allowable for business methods. As such, we do not know the
> degree of future protection that we will have on our technologies, products, and
> services. While ***<u>we will endeavor to try to protect our technologies, products,
> and services with intellectual property rights</u>*** such as patents, as appropriate,
> the process of obtaining patents is time-consuming, expensive, and sometimes
> unpredictable."
>
> (Underlined emphasis added.)

53.     The statements in ¶ 52 was false and/or misleading because, contrary to representations,

certain proprietary technologies were transferred to a potential competitor and, possibly, to a

foreign adversary in contravention of federal laws.

**Materially False and Misleading**
**Statements Issued During the Class Period**

54.     On May 11, 2021, TuSimple filed a quarterly report for the quarter ended March 31, 2021 with the SEC ("1Q 2021 10-Q"). Attached to the 1Q 2021 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Lu and Dillon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 1Q 2021 10-Q, in discussing related party transactions, did not mention Hydron.

55.     On August 6, 2021, TuSimple filed a quarterly report for the quarter ended June 30, 2021 with the SEC ("2Q 2021 10-Q"). Attached to the 2Q 2021 10-Q were SOX certifications signed by Defendants Lu and Dillon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2Q 2021 10-Q, in discussing related party transactions, did not mention Hydron.

56.     On November 4, 2021, TuSimple filed a quarterly report for the quarter ended September 30, 2021 with the SEC ("3Q 2021 10-Q"). Attached to the 3Q 2021 10-Q were SOX certifications signed by Defendants Lu and Dillon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 3Q 2021 10-Q, in discussing related party transactions, did not mention Hydron.

57.     On February 24, 2022, TuSimple filed an annual report for the fiscal year ended December 31, 2021 with the SEC ("2021 10-K"). Attached to the 2021 10-K were SOX certifications signed by Defendants Lu and Dillon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting

and the disclosure of all fraud. The 2021 10-K, in discussing related party transactions, did not mention Hydron.

58.    On May 4, 2022, TuSimple filed a quarterly report for the quarter ended March 31, 2022 with the SEC ("1Q 2022 10-Q"). Attached to the 1Q 2022 10-Q were SOX certifications signed by Defendants Hou and Dillon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 1Q 2022 10-Q, in discussing related party transactions, did not mention Hydron.

59.    On August 8, 2022, TuSimple filed a quarterly report for the quarter ended June 30, 2022 with the SEC ("2Q 2022 10-Q"). Attached to the 2Q 2022 10-Q were SOX certifications signed by Defendants Hou and Tapia attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2Q 2022 10-Q, in discussing related party transactions, did not mention Hydron. The 2Q 2022 10-Q also failed to disclose the Board's internal investigation into whether TuSimple had incubated Hydron in China without informing regulators, the Board or its shareholders.

60.    The statements referenced in ¶¶54-59 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) TuSimple was engaged in undisclosed related party transactions with Hydron, a company founded by Defendant Chen; (2) TuSimple shared confidential information and/or proprietary technology with Hydron without Board approval or

informing regulators or TuSimple shareholders; (3) TuSimple failed to disclose the Board's internal investigation, which commenced in July 2022, into TuSimple's ties to Hydron; (4) the aforementioned conduct enhanced the likelihood of regulatory scrutiny and investigatory action toward the Company; and (5) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **THE TRUTH EMERGES**

61.    On Sunday, October 30, 2022, *The Wall Street Journal* published an article titled "TuSimple Probed by FBI, SEC Over Its Ties to a Chinese Startup". In pertinent part, the article reported:

> ***TuSimple Holdings Inc., a U.S.-based self-driving trucking company, faces federal investigations into whether it improperly financed and transferred technology to a Chinese startup***, according to people with knowledge of the matter.
>
> The people said the concurrent probes by the Federal Bureau of Investigation, Securities and Exchange Commission and Committee on Foreign Investment in the U.S., known as Cfius, are ***examining TuSimple's relationship with Hydron Inc., a startup that says it is developing autonomous hydrogen-powered trucks and is led by one of TuSimple's co-founders.***
>
> ***Investigators at the FBI and SEC are looking at whether TuSimple and its executives—principally Chief Executive Xiaodi Hou—breached fiduciary duties and securities laws by failing to properly disclose the relationship***, the people familiar with the matter said. ***They are also probing whether TuSimple shared with Hydron intellectual property developed in the U.S. and whether that action defrauded TuSimple investors by sending valuable technology to an overseas adversary***, the people said.
>
> ***Hydron was started in 2021 by Mo Chen, TuSimple's co-founder. He incorporated Hydron in China, Hong Kong and Delaware***, according to public filings, with a plan to build hydrogen-powered trucks in North America modeled on a design by a subsidiary of a Chinese state-controlled auto manufacturer. People familiar with the matter said ***Hydron's operations are mostly in China***, where Mr. Chen spends most of his time. The startup was backed by Chinese investors.

*       *       *

*The investigations all center on the possibility that TuSimple leadership failed to make disclosures about the company's financial and technical transactions with Hydron that are required under U.S. law*, and how such possible undisclosed dealings may have harmed investors and constituted a failure by Mr. Hou to fulfill his fiduciary responsibilities as CEO and board chairman.

Securities laws require that related-party transactions, or financially beneficial transactions between companies or people with a relationship, must be disclosed. *Investigators are looking in particular at Mr. Hou to determine whether he was involved in setting up and providing technology to Hydron and got paid for it without making the proper disclosures*, people familiar with the matter said.

                    *       *       *

Both the U.S. and China have identified self-driving systems as critical technology. An executive order from President Biden in September called for tougher scrutiny of foreign investment in U.S. tech companies. The order declared both artificial intelligence—the technology underpinning self-driving systems—and hydrogen technology as "fundamental to national security."

*When Hydron launched, it recruited TuSimple employees—some in senior positions—and used TuSimple technology know-how and intellectual property*, said people familiar with the matter. *Some employees worked for Hydron while also continuing to work for TuSimple, in some cases getting equity shares in Hydron*, the people said.

(Emphasis added.)

62.     On October 31, 2022, TuSimple filed a Form 8-K with the SEC. Attached to the Form 8-K was a press release announcing the termination of Defendant Hou from all his positions with TuSimple. In pertinent part, the press release stated:

"On October 31, 2022, TuSimple Holdings Inc. (the "Company" or "TuSimple") announced that the Board of Directors of the Company (the "Board") terminated the employment of Xiaodi Hou as the Chief Executive Officer, President and Chief Technology Officer of the Company and removed Dr. Hou from his position as Chairman of the Board, in each case, effective as of October 30, 2022."

63.     Also on October 31, 2022, *The Wall Street Journal* published an article titled "TuSimple

14

Fires CEO Xiaodi Hou Amid Federal Probes" providing additional detail surrounding the allegations against TuSimple. In relevant part, the article said:

> "Mr. Hou was fired in connection with a continuing investigation by members of the board, the release said. That review "led the Board to conclude that a change of Chief Executive Officer was necessary," the company said in the release.
>
> The securities filing said that **the board's investigation found that TuSimple this year shared confidential information with Hydron Inc., a trucking startup with operations mostly in China and funded by Chinese investors. The filing also said that TuSimple's decision to share the confidential information with Hydron hadn't been disclosed to the board before TuSimple entered into a business deal with Hydron.**
>
> TuSimple said it didn't know whether Hydron shared or publicly disclosed the confidential information.
>
> \*      \*      \*
>
> **Investigators at the FBI and SEC are looking at whether Mr. Hou breached fiduciary duties and securities laws by failing to properly disclose TuSimple's relationship with Hydron, the China-backed startup founded in 2021 by TuSimple co-founder Mo Chen** that says it is developing autonomous hydrogen-powered trucks, the Journal reported. **Federal investigators are also probing whether TuSimple shared with Hydron intellectual property developed in the U.S. and whether that action defrauded TuSimple investors by sending valuable technology to an overseas adversary.**
>
> \*      \*      \*
>
> The Journal also has reported that **the board in July began investigating similar issues, including whether TuSimple incubated Hydron in China without informing regulators, the TuSimple board or its shareholders.** A June business presentation from Hydron viewed by the Journal named TuSimple as Hydron's first customer, and said TuSimple would purchase from Hydron several hundred hydrogen-powered trucks equipped with self-driving technology. A TuSimple spokesman said the company has considered an agreement to buy freight trucks from Hydron but isn't a Hydron customer.
>
> (Emphasis added.)

64.     On this news, TuSimple share prices fell $2.88, or over 45%, to close on October 31, 2022, at $3.43 per share.

65.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action as a class action on behalf of all those who purchased the Company's securities pursuant and/or traceable to the Registration Statement and/or during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

67.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

68.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

69.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

70.     Common questions of law and fact exist as to all members of the Class and predominate

over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the federal securities laws;

(b)     whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and to what extent the members of the Class have sustained damages and the proper measure of damages;

(c)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(d)     whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(e)     whether Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(f)     whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(g)     whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein, and;

(h)     to what extent the members of the Class have sustained damages and the proper measure of damages.

71.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
### For Violations of Section 11 of the Securities Act
### Against All Defendants

72.     Plaintiff incorporates all the foregoing by reference.

73.     This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

74.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

75.     Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

76.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

77.     By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated §11 of the Securities Act.

78.     Plaintiff acquired the Company's securities pursuant to the Registration Statement.

79.     At the time of their purchases of TuSimple securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

80.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the IPO that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the IPO. It is therefore timely.

**COUNT II**
**Violations of Section 12(a)(2) of the Securities Act**
**Against All Defendants**

81.     Plaintiff incorporates all the foregoing by reference.

82.     By means of the defective Registration Statement, Defendants promoted, solicited, and sold TuSimple securities to Plaintiff and other members of the Class.

83.     The Registration Statement for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased the Company's securities pursuant to the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Registration Statement as set forth above.

84.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Registration Statement at the time Plaintiff acquired TuSimple securities.

85.     By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2). As a direct and proximate result of such violations, Plaintiff and the

other members of the Class who purchased TuSimple securities pursuant to the Registration Statement sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the securities issued pursuant to the Registration Statement have the right to rescind and recover the consideration paid for their shares, and hereby tender their securities to Defendants sued herein. Class members who have sold their securities seek damages to the extent permitted by law.

86.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the IPO that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the IPO. It is therefore timely.

**COUNT III**
**Violations of Section 15 of the Securities Act**
**Against the Individual Defendants**

87.     Plaintiff incorporates all the foregoing by reference.

88.     This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against all Defendants except the Underwriter Defendants.

89.     The Individual Defendants were controlling persons of TuSimple by virtue of their positions as directors and/or senior officers of the Company. The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of the Company. The Company controlled the Individual Defendants and all of TuSimple employees.

90.     The Company and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the

20

process which allowed the IPO to be successfully completed.

91.      This claim is brought within one year after discovery of the untrue statements and/or omissions in the IPO that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the IPO. It is therefore timely.

## COUNT IV
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against Defendants TuSimple and the Individual Defendants

92.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

93.      This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

94.       During the Class Period, Defendants TuSimple and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

95.      Defendants TuSimple and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

       (a)      employed devices, schemes and artifices to defraud;

       (b)      made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a

fraud or deceit upon plaintiff and others similarly situated in connection with their

purchases of the Company's securities during the Class Period.

96.     Defendants TuSimple and the Individual Defendants acted with scienter in that they knew

that the public documents and statements issued or disseminated in the name of the Company

were materially false and misleading; knew that such statements or documents would be issued

or disseminated to the investing public; and knowingly and substantially participated, or

acquiesced in the issuance or dissemination of such statements or documents as primary

violations of the securities laws. These defendants by virtue of their receipt of information

reflecting the true facts of the Company, their control over, and/or receipt and/or modification of

the Company's allegedly materially misleading statements, and/or their associations with the

Company which made them privy to confidential proprietary information concerning the

Company, participated in the fraudulent scheme alleged herein.

97.      The Individual Defendants, who are senior officers and/or directors of the Company, had

actual knowledge of the material omissions and/or the falsity of the material statements set forth

above, and intended to deceive Plaintiff and the other members of the Class, or, in the

alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose

the true facts in the statements made by them or other personnel of the Company to members of

the investing public, including Plaintiff and the Class.

98.     As a result of the foregoing, the market price of the Company's securities was artificially

inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual

Defendants' statements, Plaintiff and the other members of the Class relied on the statements

described above and/or the integrity of the market price of the Company's securities during the

Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

99.     Had Plaintiff and the other members of the Class been aware that the market price of TuSimple securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

100.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

101.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

**COUNT V**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

102.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

103.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

104.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial

condition and operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

105.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

106.    The Individual Defendants, therefore, acted as controlling persons of the Company. By reason of their senior management positions and/or directors of the Company, they had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. The Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

107.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: November 10, 2022                                       Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/Phillip Kim*
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
           lrosen@rosenlegal.com

*Counsel for Plaintiff*